UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SARAH E. ORYSZAK
    10022 Wedge Way
    Gaithersbury, MD 20886

    Plaintiff,

Civil No. *1:01 - CV -0/N/*

MARK SULLIVAN, DIRECTOR
UNITED STATES SECRET SERVICE
    950 H Street, N.W.
    Washington, D.C. 20023

    Defendant.

COMPLAINT

(UNDER THE APA TO SET ASIDE A FINAL AGENCY
DECISION DENYING PLAINTIFF A SECURITY CLEARANCE)

1. This is an action under the Administrative Procedures Act 5 U.S.C., §§ 551 et. seq. to set aside a final decision of the United States Secret revoking Plaintiff's security clearance.

JURISDICTION

2. This court had jurisdiction pursuant to 28 U.S.C. § 1331 because this matter arises under the laws of the United States. It further has jurisdiction under 5 U.S.C. § 702 because, as a result of a final agency decision, plaintiff has suffered a legal wrong within the meaning of a relevant statue or regulation of the United States.

VENUE

3. Venue properly lies in this court pursuant to 28 U.S.C. § 1391 (e)(1). Defendant is an agency of the United States with its principal headquarters in the District of Columbia.

THE FACTS

4. Plaintifff, Sarah E. Oryszak was, until June 17, 2007, employed as a Special Agent with the United States Secret Service. Her employment was terminated because she failed to meet the requirements of her position due to the revocation of her Top Secret security clearance.

5. Defendant, United States Secret Service (hereinafter referred to as "the Secret Service" or "the Agency"), is an agency of the United States Department of Homeland Security. Among the duties of the Secret Service is to determine and adjudicate the security clearances of its employees to determine whether to grant or continue a security clearance for those employees.

6. The agency carries out its duties to adjudicate security clearances pursuant to Executive order 10865, as amended, and Secret Service policy implementing that Executive Order. The final decision concerning an employee's security clearance is delegated to, and made by the Agency's Security Appeals Board.

7. Plaintiff joined the Secret Service on January 15, 2002, as part as its Uniform Division after earning her Bachelor's Degree in Criminal Justice and a minor in Chemistry with a concentration in Forensics.

8. Plaintiff excelled in her position with the Uniform Division.

9. While serving in the Uniform Division of the Secret Service, plaintiff received numerous awards and commendations for her service.

10. While serving in the Uniform Division, Plaintiff received a Master of Science Degree in Justice, Law, and Society from American University, and subsequently enrolled in American University in its Doctoral Program in Justice, Law and Society.

11. In about June 2003, plaintiff was granted a Top Secret security clearance in connection with her duties in the Uniform Division of the Secret Service.

12. In or about September 2004, plaintiff applied for appointment to the position of Special Agent with the Secret Service.

13. On June 26, 2005, plaintiff was hired as a Special Agent for the Secret Service and assigned to the Washington Field office.

14. Plaintiff was, from July to September 2005, assigned to, and attended the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia.

15. Because she did not successfully complete the defensive tactics exercise, plaintiff was required to retake the FLETC Program.

16. While waiting to return to training at FLETC, plaintiff was assigned to a variety of administrative tasks in the Washington Field Office, however, plaintiff received no training and was not

assigned as an Agent or an Investigator during that time since she had not completed the FLETC Training Program. Plaintiff was not permitted to sit in on squad meetings, go to any case sites, or participate in any case work. Her duties consisted of locating case files, moving furniture, destroying computer hard-drives before they were salvaged, sorting evidence and putting it in numerical order, and making copies of evidence sheets and putting them in numerical order.

17. Among plaintiff's occasional duties were to open mail concerning counterfeit currency, date-stamp and sort the counterfeit currency attached to Counterfeit Note Reports, and prepare paperwork to be sent back to banks attached with genuine currency. Plaintiff was denied access to processing counterfeit currency in the agency's computer system since she had not completed her training. At no time was plaintiff given any training in recognizing or detecting counterfeit currency.

18. After three months of performing clerical assignments in the Washington Field office, plaintiff was reassigned to the FLETC Program from January 10 until March 29, 2006 at Glynco, Georgia. Plaintiff successfully completed the program, earning the highest academic award and the Distinguished Fitness award in her class.

19. Plaintiff returned to her home in Gaithersburg, Maryland on March 30, 2006. There she cashed a check at a bank and received a $100 bill. The following day, plaintiff drove to her family's

residence in Buffalo, New York, to visit her mother, where she remained for three days.

20.  On April 3, 2006, plaintiff took her mother to lunch at a restaurant and paid for lunch with her $100 bill and received four $20 bills as change. Plaintiff did not look at, or examine the bills before placing them directly into the bank envelope where she had kept the $100 bill.

21.  Later that day, plaintiff and her sister went shopping at a Wal-Mart. At the store, plaintiff purchased water for the trip back to Gaithersburg, Maryland, as well as purchasing some over the-counter pain medication and chewing gum. The bill came to $21.97. Plaintiff paid for the purchase with one of the $20 bills she received from the restaurant and two $1 bills. Plaintiff did not examine the $20 bill.

22.  Plaintiff and her sister then went to a Tops grocery store across the street to purchase some fruit, Gatorade, and vinegar. Plaintiff's sister used her Tops Bonus Card, with her name and address on it, to pay for her purchase. Plaintiff also used her sister's Tops Bonus Card in order to receive the sale price on the merchandise she purchased. Plaintiff's purchase was less than $10, so she paid in cash with another of the $20 bills she received from the restaurant earlier that day. The following day, after purchasing gas with the remaining two $20 bills that plaintiff had

received in the restaurant, plaintiff left Buffalo, New York, and drove back to her home in Gaithersburg, M.D.

23.    Plaintiff never observed, at any time, that the $20 bills she passed were counterfeit.

24.    Plaintiff would have received a monetary award from the Agency far greater than the value of the counterfeit currency had she turned the bills into the Agency.

25.    After plaintiff and her sister left the Tops grocery store, the $20 bill was considered to be suspect by a cashier at the store and the police were called. The $20 bill plaintiff used for her purchases at Wal-Mart was also identified as counterfeit later the same day.

26.    On April 7, plaintiff's sister called plaintiff by telephone and informed her that she had been contacted a police detective regarding the counterfeit bills. Because plaintiff had used her sister's Tops Bonus Card to make her purchase, her sister was identified, located, and contacted by the Hamburg, N.Y. Police Department. Plaintiff obtained the name of the detective from her sister and immediately called the Hamburg Police Department to offer any information.

27.    As previously scheduled, plaintiff returned on April 10, to her assigned duties at the agency's Training Center in Washington. On April 11, 2006 she was dismissed from the Training Center and was placed on administrative leave during the pendency

of the agency's investigation into the passing of the counterfeit currency.

28.   On July 19, 2006 Plaintiff voluntary submitted to an Agency administered polygraph.

29.   On September 12, 2006, the Agency revoked plaintiff's Top Secret security clearance for having "knowingly passed counterfeit currency."  Plaintiff thereafter administratively appealed the determination to revoke her Top Secret security clearance.

30.   On January 7, 2007, plaintiff received a Notice of Review from the Agency upholding the revocation of her Top Secret security clearance.

31.   Plaintiff appealed that Notice of Review to the agency's Security Appeals Board.

32.   On May 3, 2007, the agency's Security Appeals Board upheld the revocation of plaintiff's Top Secret security clearance.

33.   There are no further administrative appeals available. Plaintiff has exhausted her administrative remedies.

34.   Because having a Top Secret security clearance is an essential requirement of plaintiff's position as Special Agent, the agency terminated her employment for failing the meet the requirements of her position.

VIOLATION OF THE APA

35. The decision of the agency's Security Appeals Board is a final agency decision for which there is no further administrative appeal.

36. The Agency's decision to revoke plaintiff's Top Secret security clearance was in violation of the Administrative Procedures Act (The APA), 5 U.S.C. §~ 551 et. Seq., because it was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and unwanted by the facts to the extent that facts are subject to trial de novo.

37. There is no substantial evidence from which a reasonable mind could find that plaintiff knowingly passed counterfeit currency.

38. The decision of the agency Appeals Board is final agency action for which there is no other adequate remedy at all.

39. Plaintiff will suffer irreparable harm by the revocation of her security clearance because she is now, and will continue for the foreseeable future, to he unable to work for any government agency, or any private company which contracts with a government agency, on any matters dealing with classified national security information, or in law enforcement, or on any matters considered unclassified but sensitive requiring an equivalent clearance.

WHEREFORE, plaintiff prays: (1) that the decision of the Secret Service Appeals Board be reversed; (2) that the agency be

ordered to reinstate plaintiff's Top Secret security clearance and reinstate plaintiff to her position as a Special Agent; (3) that she be awarded back pay and benefits from the time the Agency stopped paying her; and (4) that she be awarded her attorney's fees and costs.

        Sheldon I. Cohen & Assoc.

  By:
    Sheldon I. Cohen
    D.C. Bar No. 47662
    Counsel for Plaintiff
    2009 N. 14th Street
    Suite 708
    Arlington, VA 22201
    (703) 522-1200 Phone
    (703) 522-1250 Fax
    sicohen@sheldoncohen.com

orz.OS1

C-1141
JDB

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

**I (a) PLAINTIFFS**
Sarah E. Oryszak

**DEFENDANTS**
Mark Sullivan, Director
United States Secret Service

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Montgomery, MD
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Sheldon I. Cohen
Sheldon I. Cohen & Assoc.
2009 N. 14th St, Suite 708
Arlington, VA 22201
703/522-1200

Case: 1:07-cv-01141
Assigned To : Bates, John D.
Assign. Date : 6/26/2007
Description: Admn. Agency Review

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**○ A. Antitrust**
- ☐ 410 Antitrust

**○ B. Personal Injury/Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**● C. Administrative Agency Review**
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)  OR  ○ F. Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Appeal under the Administrative Procedures Act, , 5 USC Sec. 551 et seq. of a final agency action denying a security clearance

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____  Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE June 25, 2007   SIGNATURE OF ATTORNEY OF RECORD _____

26

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.