UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SARAH E. ORYSZAK,

    Plaintiff,

    v.

MARK SULLIVAN, Director, United States Secret Service,

    Defendant.

Civil Action No.  07-1141 (JDB)

## MEMORANDUM OPINION

Plaintiff Sarah Oryszak seeks judicial review of the Secret Service's revocation of her top secret security clearance pursuant to the Administrative Procedure Act, 5 U.S.C. § 702. Defendant Mark Sullivan, Director of the United States Secret Service ("the Director"), moves to dismiss the complaint for lack of subject matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), or, in the alternative, to dismiss the complaint for failure to state a claim, see Fed. R. Civ. P. 12(b)(6). Upon careful consideration, the Court will grant the Director's motion to dismiss for lack of subject matter jurisdiction for the reasons explained below.

## BACKGROUND

The key facts in this case are undisputed.  Before June 17, 2007, Oryszak had been employed as a Special Agent with the Secret Service for two years.  Compl. ¶¶ 4, 13.  An essential requirement of the position of Special Agent is the possession of a top secret security clearance.  Id. ¶ 34.  Oryszak was granted a top secret security clearance in June 2003.  Id. ¶ 11. Because Oryszak did not successfully complete all of her federal law enforcement training on the

first attempt, she was initially assigned to perform various administrative tasks. Id. ¶¶ 15-16. Her duties included, among others, date-stamping and sorting counterfeit currency attached to Counterfeit Note Reports and preparing paperwork to be sent back to banks along with genuine currency. Id. ¶ 17. She performed these duties for a period of at least three months while waiting to return to training. Id. ¶ 18. Oryszak completed her training on March 29, 2006. Id. ¶ 18.

She returned home the next day and cashed a check at a bank, receiving a $100 bill in return. Id. ¶ 19. A few days later, she paid for lunch using that $100 bill and received four $20 bills as change. Id. ¶ 20. After spending the four $20 bills on various purchases, id. ¶¶ 21-22, two of the bills were discovered to be counterfeit: one bill was immediately detected as being counterfeit by a store clerk and the other was detected as counterfeit by the cashier later in the day, id. ¶ 25. When the counterfeit bills were traced back to Oryszak, she was sent home on April 11, 2006 and placed on administrative leave during the pendency of the agency's investigation into the passing of the counterfeit currency. Id. ¶ 27.

On September 12, 2006, the Secret Service revoked her top secret security clearance after completing its investigation, finding that Oryszak had "knowingly passed counterfeit currency." Id. ¶ 29. Oryszak administratively appealed the revocation determination, id. ¶ 29, and she received a Notice of Review on January 7, 2007, stating that the Secret Service had upheld the revocation of her security clearance, id. ¶ 30. Oryszak appealed that Notice of Review to the Security Appeals Board ("Board"), id. ¶ 31, and the decision was upheld again on May 3, 2007, id. ¶ 32. Because Oryszak no longer held the top secret security clearance required for the position of Special Agent, the Secret Service terminated her employment. Id. ¶ 34.

Oryszak has exhausted her administrative remedies, id. ¶ 33, and now comes before this


Court seeking judicial review of the administrative decision to revoke her security clearance. She contends that the Board's determination is a final agency action that violates the APA because the decision was "arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and unwanted [sic] by the facts." Id. ¶ 36.  See also 5 U.S.C. § 706.  Oryszak seeks to have the Board's decision reversed, to have her top secret security clearance and position as Special Agent reinstated, and to be awarded back pay and benefits.

## STANDARD OF REVIEW

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979).  Therefore, the factual allegations must be presumed true, and plaintiff must be given every favorable inference that may be drawn from the allegations of fact.  Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint.  Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court -- plaintiff here -- bears the burden of establishing that the court has jurisdiction.  See US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000); see also Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative

obligation to ensure that it is acting within the scope of its jurisdictional authority."); Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998). "'[P]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)). Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true. See Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir.1992).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court is mindful that all that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam). "A Rule 12(b)(6) motion tests the legal sufficiency of a complaint." Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). Thus, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp., 127 S. Ct. at 1965 (citations omitted).

## DISCUSSION

In general, the APA provides for judicial review of final agency action. See 5 U.S.C. § 702. Final agency actions carry a presumption of reviewability by the courts. See Dunlop v. Bachowski, 421 U.S. 560, 567 (1975); Heckler v. Chaney, 470 U.S. 821, 830 (1985). Judicial review is unavailable as a matter of course, however, when "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 702(a)(1)-(2). Here, there is no federal statute that expressly precludes judicial review of an agency's decision to revoke an employee's security clearance, so the Court will focus on the second exception. The Director contends that "the determination whether to grant or to revoke a security clearance is committed by law to the discretion of the Executive Branch." Def.'s Mot. at 1. The Court agrees.

The APA preclusion of judicial review when "agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2), applies when "there is no law to apply" in a given case. Citizens to Pres. Overton Park v. Volpe, 401 U.S. 402, 410 (1971) (internal quotation omitted). Without any law to apply, a court has no basis from which to proceed to review the agency's decision. In this case, Oryszak has failed to identify a statute that provides "judicially manageable standards" that would permit this Court to review the agency's determination. Heckler, 470 U.S. at 830. Oryszak's inability to locate such a statute is to be expected, however, for no such statute exists. The agency's authority to grant and revoke security clearances is not found in a congressional statute, but rather is derived from the President's delegation of his constitutional authority. See Dep't of the Navy v. Egan, 484 U.S. 518, 527 (1988).

The President is Commander-in-Chief of the Army and Navy of the United States. See U.S. Const., Art. II, § 2, cl. 1. Consistent with this authority, the Supreme Court has held that the presumption favoring review is overcome when the disputed action bears on national security.

See Egan, 484 U.S. at 527.  Courts have a well-established history of according the utmost deference to executive decisions where national security is concerned.  See, e.g., Webster v. Doe, 486 U.S. 592, 600 (1988); Egan, 484 U.S. at 527; CIA v. Sims, 471 U.S. 159, 173 (1985); Regan v. Wald, 468 U.S. 222, 243 (1984); Gilligan v. Morgan, 413 U.S. 1, 10 (1973); United States v. Reynolds, 345 U.S. 1, 10 (1953); Totten v. United States, 92 U.S. 105, 106 (1876).  The President's powers as Commander-in-Chief include the authority to classify information bearing on national security and hence to grant or revoke access to such material.  Egan, 484 U.S. at 527; see also Totten, 92 U.S. at 106.  The broad constitutional grant of authority accorded to such executive decisions "foreclose[s] the application of any meaningful judicial standard of review."  Webster, 486 U.S. at 600.[1]

Exercising his constitutional authority, the President delegated the prerogative to grant or deny employees access to classified information to various agencies, among them the Secret

---

[1] Oryszak correctly notes that broad congressional grants of agency discretion do not preclude judicial review of colorable constitutional claims unless there is a clear congressional intent to the contrary.  See Pl.'s Opp'n at 6-7 (citing Webster, 486 U.S. at 603).  But it is unsettled whether this Court may review colorable constitutional challenges to discretionary judgments made pursuant to the President's power granted by the Constitution, not by a statute.  See Nat'l Fed'n of Fed. Employees v. Greenberg, 983 F.2d 286, 290 (D.C. Cir. 1993) (allowing review of constitutional challenges to the methods used to gather information that was the basis for discretionary judgments); see also Dorfmont v. Brown, 913 F.2d 1399, 1404-05 (9th Cir. 1990) (Kozinski, J., concurring) ("Neither our earlier decision . . . nor our opinion today purports to answer the difficult preliminary question whether courts may review the security clearance decisions of officials who derive their authority from the President.").  In any event, Oryszak does not make any constitutional claims here, colorable or otherwise, so the Court declines to take up the issue.  For present purposes, it is sufficient to note that the Supreme Court has unequivocally declared that "[i]t should be obvious that no one has a 'right' to a security clearance."  Egan, 484 U.S. at 528; see also Robinson v. Dep't of Homeland Security, 498 F.3d 1361, 1364 (Fed. Cir. 2007) ("[A] federal employee does not have a liberty or property interest in access to classified information."); Dorfmont, 913 F.2d at 1404 ("[A] claim for denial of due process stemming from the revocation of a security clearance is not a colorable constitutional claim.").

Service. See Exec. Order No. 10,450, 3 C.F.R. 936 (1949-1953). The language of the executive orders themselves highlight the discretionary nature of these decisions. The President specified that clearance should only be granted where such access would be "clearly consistent with the national security interests of the United States, and any doubt should be resolved in favor of the national security." See Exec. Order No. 12,968, 60 Fed. Reg. 40,245, 40,250 (Aug. 2, 1995); see also Exec. Order No. 10,450, 3 C.F.R. at 938. He further declared that "[a] determination of eligibility for access to such information is a discretionary security decision based on judgments by appropriately trained adjudicative personnel." Exec. Order No. 12,968, 60 Fed. Reg. at 40,250 (emphasis added).

This Court does not possess the specialized expertise or the requisite resources to determine whether a particular employee's security clearance is or is not clearly consistent with national security, and there are no factors provided that would assist the Court in making such a determination. Courts are in no position to gauge "what constitutes an acceptable margin of error" for determinations that bear on national security. Egan, 484 U.S. at 529. This is particularly true where the decisions involve "sensitive and inherently discretionary judgment call[s]," such as the "grant of security clearance to a particular employee." Id. at 527. It is simply "not reasonably possible for an outside nonexpert body to review" an agency's judgment in these matters. Id. at 529. This Court is not an appropriate tribunal for making (or second-guessing) the kind of "predictive judgment" that is necessary to determine whether security clearance should be granted to a particular individual or not. Id.; see also Cole v. Young, 351 U.S. 536, 546 (1956) ("[T]here is a reasonable basis for the view that an agency head who must bear the responsibility for the protection of classified information committed to his custody should have

the final say in deciding whether to repose his trust in an employee who has access to such information.").

Oryszak argues that the Executive's broad authority to deny a security clearance for any reason or no reason at all must be granted by Congress, see Pl.'s Opp'n at 11, thereby implying that such decisions are not committed to agency discretion by law because Congress has not made such a grant here. The Court disagrees. According to the Supreme Court, the President's constitutional power to grant or to revoke security clearance does not require affirmative congressional authorization. See Egan, 484 U.S. at 527 ("[The President's] authority . . . to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to [] information [bearing on national security] flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit congressional grant.").[2] The determination whether to revoke a Secret Service agent's security clearance for national security concerns is committed to the discretion of the executive branch and is therefore unreviewable by this Court.

Oryszak concedes that the Secret Service has the discretion to decide whether security clearance should be granted, both in general and in her particular case, see Pl.'s Opp'n at 10, but she contends that the agency abused its discretion in revoking her security clearance, id. at 11. But the Secret Service did not and, indeed, cannot abuse its discretion because the discretion to grant or revoke security clearance is committed "absolutely" to the judgment of the executive.

---

[2] This does not necessarily imply that the legislature is constitutionally prohibited from regulating the grant or denial of security clearances, see, e.g., 50 U.S.C. § 435b, but the President's initial power to control access to national security information exists antecedent to any statutory grant of authority.

Heckler, 470 U.S. at 830; see also Drake v. FAA, 291 F.3d 59, 70 (D.C. Cir. 2002) ("[A]n agency cannot abuse its discretion . . . where its governing [law] confers such broad discretion as to essentially rule out the possibility of abuse."). Oryszak has pointed to no constitutional provision, statute, or regulation that intimates otherwise. With no judicially manageable standards for review, this Court cannot judge how and when an agency should exercise its discretion, much less determine whether that discretion has been abused. See Heckler, 470 U.S. at 830.

Oryszak has also suggested, however, that an agency abuses its discretion as a general matter when there is no evidence to support the decision or there is no rational connection between the facts found and the choice made. Pl.'s Opp'n at 9 (citing Jaimez-Revolla v. Bell, 598 F.2d 243, 246 (D.C. Cir. 1979); Ethyl Corp. v. EPA, 541 F.2d 1, 34 (D.C. Cir. 1976), cert. denied, 426 U.S. 941 (1976)). Oryszak bases this argument on her belief that she was not provided with notice of the reasons that her security clearance was revoked. Pl.'s Opp'n at 10. Although there are some cases that hold that an agency is required to notify a plaintiff of the reasons for the revocation of a security clearance -- see Cheney v. Dep't of Justice, 479 F.3d 1343, 1352 (Fed. Cir. 2007); King v. Alston, 75 F.3d 657, 661-2 (Fed. Cir. 1996) -- they are not binding precedent on this Court, see Tequila Centinela, S.A. de C.V. v. Bacardi & Co., 517 F. Supp. 2d 1, 13 (D.D.C. 2007) (rejecting the Federal Circuit's precedent). In any event, however, there is no need for the Court to decide whether to adopt the Federal Circuit's reasoning because here the Secret Service provided sufficient notice of the reasons it was revoking Oryszak's security clearance. See Pl.'s Opp'n Attach. A. Thus, Oryszak's complaint would be dismissed even under the Federal Circuit's approach.

Even if there are no statutorily-created standards that can allow for judicial review, an agency's own regulations can provide standards that supply a basis for judicial review. See C.C. Distributors, Inc. v. United States, 883 F.2d 146, 154 (D.C. Cir. 1989). In delegating his authority to revoke security clearances, the President has outlined procedures for agencies to follow before revoking or denying a clearance to a person. See Exec. Order No. 12,968, 60 Fed. Reg. at 40,252. But the protocols in question in this case are only procedural and do not serve as substantive law for the courts to apply.[3] Even assuming that this Court could review any part of the decision to revoke Oryszak's security clearance, it would only be to ensure that the agency followed its own internal procedures. The Court cannot weigh the substantive merits of the decision because the executive orders do not create judicially manageable standards for doing so.

The procedures allow for, inter alia, a written explanation of the basis for the determination, an opportunity for internal agency review, and an additional opportunity to appeal to a panel appointed by the head of the relevant agency. Exec. Order No. 12,968, 60 Fed. Reg. at 40,252. The panel's decision, or the decision of the agency head if the panel recommends it, is final. Id. In this case, the Secret Service followed these procedures as outlined and determined that Oryszak's security clearance should be revoked. Oryszak's only basis for claiming that the agency deviated from the outlined procedure is that the agency did not provide sufficient justifications for its determination. Oryszak, however, was provided with the reasons for the Board's decision when she received the Secret Service's initial Notice of Determination ("NOD")

---

[3] The protocols explicitly purport not to limit the discretion of the agency head in revoking security clearance on national security grounds. See Exec. Order No. 12,968, 60 Fed. Reg. at 40,252-53 ("This section shall not be deemed to limit or affect the responsibility and power of an agency head pursuant to any law or other Executive order to deny or terminate access to classified information in the interests of national security.").

on September 12, 2006.  Compl. ¶ 29; see also Pl.'s Opp'n Attach. A.  Thus, even if the agency was required to notify Oryszak of the reasons for the security clearance revocation, it has done so here.  The NOD sufficiently explains the basis for the agency's decision.

      Although the case comes to the Court on a motion to dismiss, the Court does not have to accept Oryszak's bald contention that the agency provided no explanations for its action if the facts do not bear it out.  See Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  In fact, the attachments provided by Oryszak herself illustrate otherwise.  Even construing the documents as liberally as possible in her favor, the supporting material plainly refutes Oryszak's allegation that no evidence was provided.

      The NOD states that Oryszak admitted to making the relevant purchases, and she does not deny that the bills were counterfeit.  Pl.'s Opp'n Attach. A at 2.  The only dispute is whether she knew that the bills were counterfeit at the time she passed them.  Id.  The NOD details that Oryszak had at least three months of experience handling counterfeit bills.  Id.[4]  According to the agency, Oryszak was or should have been familiar with counterfeit currency after that exposure.  The NOD explains that Oryszak's routine exposure to handling counterfeit money made her assertions unbelievable, especially since the counterfeit bills were so quickly identified as

---

[4] Oryszak's complaint states that she performed clerical duties (including handling counterfeit bills) for three months, Compl. ¶ 18, while the memorandum finds that Oryszak had such experience for over four months, Pl.'s Opp'n at 2.  The Court may consider material beyond the allegations of the complaint in determining whether it has jurisdiction to hear the case, but it must still accept the factual allegations in the complaint as true.  See Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005).  However, the Court cannot review the determination that Oryszak would or should have been familiar with counterfeit bills after a period of either three or four months.  Thus, the discrepancy is irrelevant for present purposes in any event.

forgeries by the two separate cashiers who received them.  Id. at 2-3.[5]  The agency also states that the security concerns were not sufficiently reduced or eliminated by Oryszak's response or any other applicable mitigating factors.  Id. at 3.[6]  Based on this evidence, the agency concluded that Oryszak's retention of a top secret security clearance was not "clearly consistent with the interests of the national security."  Id. (internal quotation omitted).  In its final decision, the Board indicated that it had reviewed the NOD and concurred with its conclusions.  Pl.'s Opp'n Attach. B.  Even positing that the Court needs to review the agency's justifications to ensure that they are procedurally adequate, Oryszak's possession of these documents demonstrates that the agency gave her a sufficient written explanation for the basis of its determinations.

An abuse of discretion may be found only where the agency provides no evidence for its decision.  Jaimez-Revolla, 598 F.2d at 246.  The agency's decision must be affirmed if a rational basis exists for it.  Ethyl Corp., 541 F.2d at 34.  That low threshold was certainly satisfied here.  Without going into the merits of the decision, this Court notes that there is a rational connection between the facts presented and the choice made by the agency.  Although the agency's memorandum does not spell out all the specific inferences it drew to make its final determination, the decision can still be upheld because the agency's rationale "may reasonably be discerned."  See Ethyl Corp., 541 F.2d at 34 n.73 (quoting Bowman Transp., Inc. v. Ark.-Best

---

[5] One bill was immediately detected by a store clerk as being counterfeit, and another was detected when the cashier counted her drawer.  Pl.'s Opp'n Attach. A at 2-3.

[6] Although the NOD indicates that Oryszak provided an oral and a written response to the initial revocation, Pl.'s Opp'n Attach. B, neither party specifies what Oryszak's response actually was.  This factual gap is irrelevant because the Court cannot review the agency's determination on the merits to judge whether Oryszak's response could justify overturning the Board's decision in any event.

Freight Sys., Inc., 419 U.S. 281, 286 (1974)).  Likewise, the agency's decision is neither arbitrary and capricious nor unwarranted by the facts.  Although this Court cannot judge the agency's justifications on their merits, the explanation provided by the agency makes it evident that the procedures outlined by the executive branch were followed and that Oryszak received adequate procedural protections.  The Court stresses that today's judgment takes no view whatsoever on the appropriateness vel non of the agency's particular decision.

     Oryszak concedes that her employment as a Special Agent was conditional upon her having top secret security clearance.  Compl. ¶ 34.  Because the agency's decision to revoke her security clearance must stand, its subsequent decision to terminate her employment based at least partially, if not entirely, on her lack of proper security clearance must stand as well.  See Bennett v. Chertoff, 425 F.3d 999, 1003 (D.C. Cir. 2005); Ryan v. Reno, 168 F.3d 520, 524 (D.C. Cir. 1999).

     The Court finds that the Secret Service's decision to revoke Oryszak's security clearance was a decision committed to agency discretion by law.  Accordingly, the Court will grant the Director's motion to dismiss for lack of subject matter jurisdiction.[7]

---

[7] The Director also moves for dismissal for failure to state a claim upon which relief can be granted.  Def.'s Mot. at 1.  He does not offer, however, any argument for the motion beyond his averment that the complaint does not allege a valid cause of action under the APA.  Def.'s Mot. at 6.  Oryszak's only response is that the Director's motion to dismiss should be treated as a motion for summary judgment, and Oryszak cannot present all material facts pertinent to the motion without discovery.  Pl.'s Opp'n at 12.  It is unnecessary for the Court to resolve this issue because the Court does not have subject matter jurisdiction over this case; that supplies an independent justification to dismiss this action.  See Public Citizen v. U.S. Dist. Court for D.C., 486 F.3d 1342, 1346 (D.C. Cir. 2007) (noting that a court must have the power to adjudicate a case before dismissing it for failure to state a claim).

**CONCLUSION**

    For the foregoing reasons, the Court will grant the Director's motion to dismiss. A separate Order accompanies this Memorandum Opinion.

                                                /s/
                                    JOHN D. BATES
                          United States District Judge

Date: July 8, 2008